UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRADLEY R. ANDERSON,<br><br>                Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                Defendant. | Case No. 2:15-CV-01933-RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Bradley R. Anderson seeks review of the denial of his Supplemental Security Income application. He contends the ALJ erred by misevaluating the medical opinion evidence from three providers; failing to find he had severe, medically determinable impairments of depressive disorder and anxiety disorder at step two of the five-step sequential evaluation process; failing to consider that he had been determined to be disabled for purposes of the DSHS Cash and Medical Assistance Program; and finding he was not disabled between his hearing date and the date of the ALJ's decision. Dkt. 16. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

REPORT AND RECOMMENDATION - 1

**BACKGROUND**

Mr. Anderson is currently 55 years old, has at least a tenth grade education, and has worked as a fish cleaner and cement mason. Tr. 41, 76, 693-94. On October 24, 2009, he applied for benefits, alleging disability as of May 1, 2004. Dkt. 16 at 4.[1] Mr. Anderson's applications were denied initially and on reconsideration, and by the ALJ after his first hearing. Tr. 8-31.

This is the second time this matter comes before the Court for judicial review of the administrative decision. The first review, *Anderson v. Colvin*, C13-1430 MAT, resulted in a reversal of ALJ Kennedy's decision and a remand to reassess the medical opinions of Bradley Roter, M.D.; Victorial McDuffee, Ph.D.; and Lisa Olsson, Ph.D. Tr. 802-10. Pursuant to remand by the Court, the Appeals Council vacated the first decision. Tr. 829. ALJ Kennedy conducted a second hearing on March 26, 2015, finding Mr. Anderson not disabled. Tr. 670-95.

Utilizing the five-step disability evaluation process,[2] the ALJ found Mr. Anderson had not engaged in substantial gainful activity since his amended onset date, and he has severe impairments of cognitive disorder status-post brain tumor resection; meningioma; seizure disorder; obstructive sleep apnea; diabetes mellitus; and history of a substance use disorder. Tr. 672-73. The ALJ further found Mr. Anderson has the RFC to perform medium work with additional physical and mental limitations, he could not perform his past relevant work, but he could perform jobs in the national economy so he was therefore not disabled. Tr. 680-95. Mr. Anderson did not file exceptions to the ALJ's decision after remand, and the Appeals Council did not assume jurisdiction of the case. Accordingly, the ALJ's decision after remand is the Commissioner's final decision that is subject to judicial review. *See* 20 C.F.R. §§ 416.1484,

---

[1] The onset date was later amended to December 28, 2011. Tr. 672.
[2] 20 C.F.R. §§ 404.1520, 416.920.

REPORT AND RECOMMENDATION - 2

422.210.

## DISCUSSION

**A.     The ALJ Erred in Evaluating Some of the Medical Opinion Evidence**

The ALJ must give specific and legitimate reasons for rejecting a treating or examining doctor's opinion that is contradicted by another doctor, and clear and convincing reasons for rejecting a treating or examining doctor's uncontradicted opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The Court may set aside the ALJ's decision if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).

    **1.     *Bradley Roter, M.D.***

Mr. Anderson first challenges the ALJ's treatment of treating doctor Bradley Roter's August 2010 opinion. Dr. Roter diagnosed Mr. Anderson with low back strain, ADHD, Organic Brain Syndrome, and sleep apnea. Tr. 549. The doctor opined that Mr. Anderson's ADHD and Organic Brain Syndrome would severely affect his ability to communicate and understand or follow directions. *Id.* The doctor also opined Mr. Anderson's physical limitations would markedly impact his ability to sit, lift, communicate, and understand or follow directions. *Id.* The doctor opined Mr. Anderson would be able to work at a sedentary level, meaning he could lift ten pounds and could frequently lift and/or carry items such as files and small tools. *Id.*

The Commissioner contends Dr. Roter's opinion is of little relevance because it was rendered prior to the alleged onset date of disability. Dkt. 17 at 5. The Court reserves judgment on the assertion because the Court is "constrained to review the reasons the ALJ asserts," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), and may not substitute its "conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions." *Treichler v. Comm'r,*

*Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).  As the ALJ did not raise this reason as a basis for rejecting the opinion, the Court declines to consider it.

      The ALJ explicitly rejected the doctor's opinion that Mr. Anderson was limited to sedentary work.  *See* Tr. 687.  Mr. Anderson contends the ALJ erred because the ALJ only directly addressed the doctor's opinion that he was limited to sedentary work. Dkt. 16 at 8-9.  The Court disagrees with Mr. Anderson's interpretation of the ALJ's decision.  The ALJ clearly addressed — and rejected — each of Dr. Roter's diagnoses.  Tr. 687.  Specifically, the ALJ found that Mr. Anderson's ADHD was not medically established — a finding Mr. Anderson does not challenge — and rejected the doctor's organic brain syndrome finding because Dr. Roter never administered cognitive testing, Mr. Anderson "demonstrated normal cognitive functioning on mental status examinations," and he demonstrated "only mild memory deficits on the WMA and average intellectual functioning on the WAIS." Tr. 687.  Mr. Anderson concedes Dr. Roter never administered cognitive testing when he argues that Dr. Roter was "aware" of his memory issues "since he referred plaintiff to [another provider] to administer those tests." Dkt. 16 at 9.  A physician's opinion may be discounted when it does not have supportive objective evidence and when it is "conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings[.]" *See Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004).  And Mr. Anderson does not challenge the ALJ's finding that he demonstrated normal cognitive functioning on mental status examinations. *See* Tr. 687; Dkt. 16 at 9.

      But Mr. Anderson does challenge the ALJ's finding that the organic brain syndrome was inconsistent with the record because he demonstrated "only mild memory deficits," citing Dr. Cook's testing results indicating his working memory exceeded only 3% of his peers. Dkt. 16 at 9 (citing Tr. 503).  The Court observes that Dr. Cook's interpretation of her own WMS and

WAIS testing, which the ALJ accorded "great weight," *see* Tr. 689, suggests Mr. Anderson was "capable of simple and more complex tasks," and did "not exhibit memory deficits today." Tr. 505.  The Court finds it was not unreasonable for the ALJ to rely on the doctor's functional assessment in interpreting the testing that doctor administered. *See* Tr. 502-05; 687. Accordingly, it was also not unreasonable for the ALJ to conclude Mr. Anderson had "mild memory deficits" in rejecting Dr. Roter's opinion.  Because the ALJ gave valid reasons to reject Dr. Roter's opinion, the ALJ's decision on this opinion should be affirmed.

### 2. *Lisa Olsson, Ph.D.*

In January 2012, examining doctor Lisa Olsson completed a Mental Residual Functional Capacity assessment using a form normally utilized by Disability Determination Services claims examiners.  *See* Tr. 662-64.  In Section I of the form, she noted several marked limitations pertaining to understanding, memory, and sustained concentration and persistence. *Id.*  In Section III, the "Functional Capacity Assessment" portion of the form, Dr. Olsson stated Mr. Anderson had limits in his ability to learn new information, he is "frequently distracted and inattentive and needs regular redirection to get back on track," and he "processes information slowly — in the impaired range, but has normal intellectual skills."  Tr. 664.

The ALJ accorded "little weight" to the opinion because the doctor's narrative explanation in Section III "did not describe the claimant's work abilities in vocational terms, and her narrative explanation does not justify the marked restrictions in section I," as required by the Program Operations Manual System ("POMS").  Tr. 690.  The ALJ also concluded that the 2012 assessment of moderate and marked mental limitations in Section I was out of proportion to the doctor's December 2010 examination.  *Id.*

Mr. Anderson challenges the ALJ's rejection of Dr. Olsson's findings in Section I of the

form. Dkt. 16 at 10. He first contends the ALJ erred because Dr. Olsson is not a DDS doctor and she was not required to follow the POMS instructions. The reasoning is not persuasive. *Id.* Mr. Anderson cites no authority to conclude Dr. Olsson would be exempt from completing the form as *the form itself* instructed,[3] and thus fails to show the ALJ erred in addressing any shortcomings in the narrative at Section III of the Mental Residual Functional Capacity Assessment. And Mr. Anderson does not address the ALJ's conclusions that the limitations opined by Dr. Olsson were not justified, i.e., that there was no explanation for the marked restrictions the doctor opined. This was a valid basis for rejecting the opinion. *See Batson*, 359 F.3d at 1195. However, it is not entirely clear why the ALJ found Dr. Olsson did not describe Mr. Anderson's work abilities in vocational terms. Section I of the form completed by Dr. Olsson identified the doctor's findings regarding specific work-related functional limitations. *See* Tr. 662-63. But that issue is separate from whether the doctor provided *explanations* for those limitations.

Mr. Anderson also argues the ALJ's conclusion that Dr. Olsson's reports were inconsistent was erroneous because the ALJ focused upon Dr. Olsson's summary ("general") findings, rather than her assessments about specific functional impairments. Dkt. 16 at 11. In other words, Mr. Anderson challenges the ALJ's interpretation of Dr. Olsson's 2010 findings. The Court cannot say the ALJ erred in relying on the *doctor's assessment* of test results, rather than the individual results themselves. And no one disputes that, in 2010, Dr. Olsson concluded in a section entitled "Interpretation of Overall Test Findings," that Mr. Anderson's memory impairments were "generally mild." Tr. 601.

---

[3] Section I of the form instructs that "[d]etailed explanation of the degree of limitation for each category . . . is to be recorded in Section III." Tr. 662. Section III instructions the author to elaborate on the preceding capacities, and "[e]xplain your summary conclusions in narrative form. Include any information which clarifies limitation or function." Tr. 663.

REPORT AND RECOMMENDATION - 6

To the extent the ALJ erred in evaluating Dr. Olsson's opinion, the invalid reasons do not negate the valid reasons he provided. *Batson*, 359 F.3d at 1197. The Court thus recommends affirming the ALJ's decision with respect to Dr. Olsson's 2012 opinion.

### 3. *Victoria McDuffee, Ph.D.*

Dr. McDuffee provided a Psychological/Psychiatric Evaluation in September 2011. She diagnosed Mr. Anderson with Major Depressive Disorder, recurrent, severe without psychotic features; Generalized Anxiety Disorder; and Personality Disorder, NOS. Tr. 638. She opined the anxiety and anger she observed would have a moderate impact on his ability to work, the persecutory ideation she observed would have a marked impact on his ability to work, and the depression she observed would have a severe impact on his ability to work. Tr. 637. She further opined Mr. Anderson had marked limitations in his ability to communicate and perform effectively in a work setting with even limited public contact, and severe limitations in his ability to maintain appropriate behavior in a work setting, and she identified the basis for those findings. Tr. 639. Dr. McDuffee conducted a memory malingering test, a Trail Making test, and the Minnesota Multiphasic Personality Inventory test. Tr. 640. She assessed a General Assessment of Functioning score of 40 based on Mr. Anderson's reports; her observations; her review of records; and Mental Status Exam, Trail Making, and TOMM testing. Tr. 638. She also estimated Mr. Anderson would be impaired for at least twelve months. Tr. 639.

The ALJ first accorded "little weight" to the opinion because he found that personality disorder was not medically established. Tr. 691. The ALJ rejected this opinion because it was inconsistent with other mental health evaluations which had no diagnosis of personality disorder; it was inconsistent with treatment notes, which documented no evidence of significant antisocial or paranoid traits; Mr. Anderson had never been fired due to difficulty getting along with others;

REPORT AND RECOMMENDATION - 7

and because Dr. McDuffee's diagnosis was based on Mr. Anderson's responses to the MMPI, which Dr. McDuffee noted "raised concerns regard [*sic*] his variable response inconsistency and overreporting." Tr. 677 (citing Exhibits 1F, 2F, 3F, 5F, 16F, 17F, 19F, 25F, 28F, 4E7). Mr. Anderson does not challenge the ALJ's personality disorder finding and the Court finds no reason to disturb it. *See* Dkt. 16 at 13.

The ALJ also rejected Dr. McDuffee's opinion that Mr. Anderson had severe depressive and anxiety disorders. Tr. 691. Specifically, the ALJ found that the allegations were inconsistent with the medical record. *Id.* (citing Tr. 287, 290-91, 294, 297, 299, 301, 608, 1007-08, 1014, 1045). The Court agrees with Mr. Anderson that the majority of the records cited by the ALJ are minimally relevant because they predate Mr. Anderson's alleged onset date by months to years. Mr. Anderson then argues that the ALJ erred because he omitted other records showing he had "flat affect" and was depressed. Dkt. 16 at 13-14 (citing Tr. 493, 550). The argument is unpersuasive because those records, too, predate Mr. Anderson's alleged onset date.

The ALJ next rejected the opinion because he found "the medical records document only sporadic complaints of depression, essentially no complaints of anxiety, no mental health counseling, and no psychiatric medication except for a short trial of citalopram in August/September 2010." Tr. 691. Mr. Anderson observes Dr. Widlan diagnosed depression on several occasions. Tr. 565, 637, 966. Two of these predate the alleged onset date, but one (dated 2012) does not. *See id.* The ALJ rejected Dr. Widlan's 2012 opinion for the exact same reasons he rejected Dr. McDuffee's: "the medical records document only sporadic complaints of depression, essentially no complaints of anxiety, no mental health counseling, and no psychiatric medication except for a short trial of citalopram in August/September 2010." Tr. 692. Mr. Anderson also cites a 2012 opinion from Dr. McNamara, wherein the doctor diagnosed

1  depression. Tr. 976. The ALJ rejected that diagnosis for the same reasons. *See* Tr. 692.

2  Finally, Mr. Anderson points to state agency consultant opinions finding Mr. Anderson had

3  severe affective disorders. Tr. 793, 818. The ALJ rejected these opinions "for the reasons

4  discussed above." Tr. 693. In rejecting these consistent opinions, the ALJ simply rejected each

5  opinion on the basis that it was inconsistent with the record. This troubling reasoning suggests it

6  has no foundation in fact.

7  The ALJ's remaining reasons for rejecting Dr. McDuffee's opinion are also invalid. The

8  ALJ contends the doctor did not review any of the treatment records that support the ALJ's

9  conclusions and that Dr. McDuffee instead relied on Mr. Anderson's self-reports. Tr. 691. Dr.

10 McDuffee did not need to review other treatment records when her diagnosis was based on her

11 own observations (including observations of depression) and test results. Tr. 637-40. For the

12 same reason, the ALJ's conclusion that the doctor relied on Mr. Anderson's unreliable self

13 reports is not based in fact.[4] *See* Tr. 691. The Court also agrees with Mr. Anderson that his

14 perfect score on a mental status examination is not dispositive of whether or not he suffers from

15 depression or anxiety. *See* Dkt. 16 at 14. Here, the mental status exam assessed three areas:

16 appearance, behaviors, and cognition. Tr. 641. In the section on behaviors, the doctor noted Mr.

17 Anderson was irritable, provocative, hostile, suspicious, angry, evasive, and labile. Tr. 641. The

18 score of 30, however, was correlated with a finding of "no cognitive impairment." Tr. 642.

19 Finally, the ALJ rejected Dr. McDuffee's opinion because he found it was inconsistent

20 with his activities, including "posting items on craigslist, doing odd jobs around the community,

---

[4] An ALJ does not provide valid reasons for rejecting an examining physician's opinion "by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r, Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). Here, Dr. McDuffee specifically found "[m]alingering is not suspected." Tr. 640.

REPORT AND RECOMMENDATION - 9

and spending enormous amount [sic] of time developing his concept of a cat dish." Tr. 691. The ALJ fails to explain any linkage, much less a contrary one, between an opinion regarding depression and anxiety, and these activities. The Court "require[s] the ALJ to build an accurate and logical bridge from the evidence to [his] conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). Here, the ALJ erred.

In sum, the ALJ erred in rejecting Dr. McDuffee's opinion regarding depressive and anxiety disorders. On remand, the opinion should be reevaluated. To the extent reevaluation of the opinion implicates any other opinions (including Dr. Widlan's 2012 opinion, Dr. McNamara's 2012 opinion, and the State Agency consultant opinions of Jan Lewis and Thomas Clifford), those opinions should be reevaluated as well.

**B.     The ALJ Erred at Step Two**

At step two of the five-step sequential evaluation process, the ALJ found Mr. Anderson had severe, medically determinable impairments of cognitive disorder status-post brain tumor resection; meningioma; seizure disorder; obstructive sleep apnea; diabetes mellitus; and history of a substance use disorder. Tr. 673. Mr. Anderson contends the ALJ should have also found he had severe, medically determinable impairments of depressive disorder and anxiety disorder. Dkt. 16 at 5. The ALJ concluded at step two that Mr. Anderson did not have severe conditions of depression or anxiety because DSHS evaluations by Drs. McDuffee, Cavanee, and Widlan diagnosing these conditions were based on Mr. Anderson's non-reliable self-reports, and because objective testing, including the Beck Depression Inventory (BDI) and MMPI, reflect only subjective responses. Tr. 676. The ALJ's conclusion was also based on his determination that Mr. Anderson's other medical records indicated only "sporadic complaints of depression,

REPORT AND RECOMMENDATION - 10

essentially no complaints of anxiety, no mental health counseling, and no psychiatric medication except for a short trial of citalopram in August/September 2010." *Id.*

The Commissioner contends the ALJ did not err because he appropriately assessed an adverse credibility determination, which Mr. Anderson does not challenge. Dkt. 17 at 3. This reasoning completely ignores Mr. Anderson's argument, supported by the record, that several doctors' opinions diagnosing depression, adjustment disorder, and/or affective disorder were based on more than just Mr. Anderson's subjective reports. The argument also presumes, without support, that testing such as the Beck and MMPI exams have no evidentiary value when an ALJ discounts a claimant's credibility. Indeed, the Commissioner fails to present, and the Court is not aware of, any authority supporting that proposition. But even if the Commissioner's presumption was correct, the argument ignores the full panel of testing presented to Mr. Anderson, which included Rey tests indicating he was not malingering.

The Court has already summarized some of the opinion evidence supporting Mr. Anderson's claim that he has a depressive and/or anxiety disorder. *See* Section A.3, *supra*. That summary is equally relevant here. Mr. Anderson also identifies other opinions containing diagnoses of depression, anxiety, and/or affective disorder. Dkt. 16 at 5. For example, in October 2010, Dr. Gerald Cavenee, Ph.D. completed a Psychological/Psychiatric Evaluation and diagnosed Major Depressive Disorder, Recurrent, Severe, Without Psychotic Features. Tr. 566. The provider noted he observed depressed mood, Tr. 565, and conducted a BDI-II test with results indicating Mr. Anderson had "severe" depression, Tr. 569, 573. Notably, both Drs. McDuffee and Widlan found Mr. Anderson was not malingering. Tr. 640, 968.

In reviewing the ALJ's step-two findings, the Court repeats its conclusion that the ALJ erred in using circular reasoning to find Mr. Anderson does not have severe depressive or anxiety

REPORT AND RECOMMENDATION - 11

disorders. *See* Section A.3, *supra*. That conclusion necessarily implicates the reliability of the ALJ's findings at step two. In addition, it is clear that these providers' opinions were based on more than just Mr. Anderson's self-reports; rather, the doctors rendered their opinions based on mental status examinations, psychological testing, clinical observations, and their own professional judgment.

At step two, Mr. Anderson must make a threshold showing that (1) he has medically determinable impairments; and (2) his medically determinable impairments are severe or were severe for at least 12 continuous months. *See Bowen v. Yuckert*, 482 U.S. 137, 145, (1987); §§ 404.1520(c), 416.920(c), 404.1505, 416.905. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (*citing Bowen*, 482 U.S. at 153-54). Here, the ALJ's finding at step two was premised on flawed reasoning. Accordingly, the Court cannot say the ALJ's step two finding was reasonable or that Mr. Anderson's depressive and anxiety disorders have no more than a minimal effect on his ability to work. The Court also cannot conclude the ALJ's error was harmless because neither of the disorders are clearly incorporated into Mr. Anderson's RFC. The Court thus recommends that, on remand, after reevaluating the medical opinion evidence, the ALJ also reevaluate Mr. Anderson's step two findings.

C. **DSHS Benefits**

Mr. Anderson next argues the ALJ failed to consider the fact that he had been determined to be disabled for purposes of the DSHS Cash and Medical Assistance Program. Dkt. 16 at 17 (citing Tr. SSR 06-03p). The Commissioner contends Mr. Anderson's argument is incomplete,

because he fails to provide factual support for his contention he had been determined to be disabled or indicating how much assistance he received.  Dkt. 17 at 6.  On reply, Mr. Anderson points to many of the same DSHS evaluations discussed above, and suggests the Court should conclude he received such benefits based on circumstantial evidence in his medical record.  *See* Dkt. 24 at 10-11.  The Court agrees with the Commissioner that the evidence Mr. Anderson relies upon is insufficient; moreover, Mr. Anderson's argument fails to establish harmful error because he does not explain how any potential procedural error affected the outcome of his case.  *See, e.g., Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) ("The burden of proof is on the claimant as to steps one to four.").  The Court may deem arguments that are unsupported by explanation to be waived.  *See Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at *2 (unpublished opinion) (*citing Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue)).  Accordingly, the Court finds no related error in the ALJ's decision.

**D.      Period Post-Hearing**

Finally, as the Court understands the argument, Mr. Anderson contends that even if he was appropriately found not disabled after his amended onset date, a finding that he was not disabled from the date of his hearing (March 26, 2015) to the date of the ALJ's decision (August 21, 2015), is not supported by substantial evidence.  Dkt. 16 at 17-18.  This argument is based upon Mr. Anderson's contention that he was not afforded notice he could submit evidence after the hearing, which Mr. Anderson characterizes as a due process violation.  *Id.*  Mr. Anderson also makes the public policy argument that routinely permitting an ALJ to extend a non-disability finding to the date of the decision of non-disability "creates a situation in which the

claimant should be entitled to submit additional evidence on a regular basis while awaiting the decision that in turn would further delay the decision, which in turn would result in the admission of further evidence, etc." *Id.* at 18.  The Commissioner in turn argues that Mr. Anderson was represented by experienced counsel before the agency, and counsel was aware of the opportunity to submit additional evidence.  Dkt. 17 at 7.  The Commissioner further contends Mr. Anderson had the opportunity to submit additional evidence to the Appeals Council, which he failed to do.  *Id.*

The Court observes that Mr. Anderson received a "Notice of Decision — Unfavorable" dated the day of the ALJ's decision.  Tr. 667-68.  This notice provides: "If you disagree with my decision, you or your representative may submit written exceptions to the Appeals Council. 'Written exceptions' are your statements explaining why you disagree with my decision."  Tr. 667.  Mr. Anderson does not contend he never received this notice.  Accordingly, the Court finds unpersuasive Mr. Anderson's argument that he was deprived of due process.

A lack of effective or actual notice may have been persuasive because it might suggest Mr. Anderson would not think to continue to build his medical record after the date of his hearing.  In this case, however, even with notice, Mr. Anderson did not submit written exceptions or additional evidence to the Appeals Council, and did not seek to submit additional evidence to this Court on appeal.  *See, e.g.,* sentence six of 42 U.S.C. § 405(g).  Mr. Anderson thus cannot show he suffered harm.  In the absence of success on his lack-of-notice argument, Mr. Anderson's public policy argument has no traction.  The Court therefore declines to address it.

**CONCLUSION**

For the foregoing reasons, the Court recommends that the Commissioner's decision be

REPORT AND RECOMMENDATION - 14

**REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate Dr. McDuffee's opinion regarding depressive and anxiety disorders, and, to the extent reevaluation of the opinion implicates any other opinions (Dr. Widlan's 2012 opinion, Dr. McNamara's 2012 opinion, the State Agency consultant opinions of Jan Lewis in 2013 and Thomas Clifford in 2014, and any other opinions diagnosing depression and anxiety that were rejected because they were inconsistent with the record), those opinions should be reevaluated as well.  After reevaluating the evidence, the ALJ shall also reevaluate the findings at step two.

A proposed order accompanies this Report and Recommendation.  Any objection to this Report and Recommendation must be filed and served no later than **August 29, 2016**.  If no objections are filed, the Clerk shall note the matter for August 30, 2016 as ready for the Court's consideration.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed ten pages.  The failure to timely object may affect the right to appeal.

DATED this 15th day of August, 2016.

BRIAN A. TSUCHIDA
United States Magistrate Judge